## MEADE v. THE K. C., ST. J. & C. B. R. Co.

EVIDENCE: SUFFICIENCY OF TO SUSTAIN VERDICT.

### Appeal from Fremont District Court

FRIDAY, DECEMBER 15.

IT is alleged in the petition that defendant did, with its locomotive engine and train of cars, in consequence of defendant not having fenced and inclosed its railway as required by law, knock down, injure, bruise, run over, fatally injure, and entirely destroy, of the property of plaintiff, one two year old colt, of the value of one hundred dollars. The answer was a general denial. Verdict and judgment for plaintiff, and defendant appeals.

*Sapp & Lyman*, for appellant.

*A. R. Anderson*, for appellee.

ROTHROCK, J.—The plaintiff's colt was found in a cattle-guard upon the defendant's road. One of the bars of the cattle-guard was broken so as to allow the body of the animal to go through to the pit below. It was seriously injured, so much so that the jury found that it was worthless. There was no evidence tending to show that the colt was actually struck by the engine or cars of defendant. The only witness who testified in behalf of the plaintiff, as to the running of the train near the point where it is claimed the accident happened, was the plaintiff himself. He testified that the cattle-guard where the colt was found is about a mile from his house, that his house is about two hundred yards from the track, and he proceeded with his testimony as follows:

"The stock was all along the track on each side when this train came down in the evening, and seemed to be all on the track and some on each side; it commenced blowing at the horses, and they got frightened and all

took right down the track into the guards which were all closed in, and they could not get out; and this train frightened the horses so that they ran right down the track; they kept blowing but I did not see that the train stopped; it went about as fast when I last saw it as when it first commenced blowing * * * * * ; I did not see this mare get into the cattle-guard * * * * * ; as long as I could see the train it did not seem to slacken speed * * * * ; when I saw them last they were about half way to the cattle-guard, and the train seemed to be very close to them, chasing and blowing; after that I could not tell what was going on; I do not know how my mare got into the cattle-guard."

This witness also states that the railroad was fenced on both sides from the cattle-guard about half a mile in the direction of his house, at which point there was no fence on one side, and that he stood on the fence of his yard when the train passed, which was in the evening, a little after sunset; the colt was found in the cattle-guard the next day.

The engineer of the train in question testified to horses being about the track, as testified to by the plaintiff; that he blew the whistle and the horses were frightened and ran down the track, and then ran away from the track through an opening in the inclosure, and that none of them were chased down to the cattle-guard. In his cross-examination he uses this language: " I could distinguish a horse on the track half a mile; I could not have run upon a horse without seeing him at that time, if he had been lying above the track; no horse undertook to get out at this crossing where the cattle-guard was; they all crossed the track and went out above; I am positive I drove no horse down the track to this cattle-guard; it was light enough to see."

The fireman is equally positive in his statement that no horse was chased down to the cattle-guard, but that they crossed and left the track above. There is nothing in the testimony of these witnesses to lead us to think they are not truthful men. Their testimony does not conflict with that of plaintiff; he does not claim that he saw the horses nearer than half a mile of the cattle-guard in question. Under this state of facts the conclusion is irresistible that there is absolutely no evidence to sustain this verdict. The other alleged errors we need not discuss.

REVERSED.