MARCUS BROCKERT, Appellee, v. CENTRAL IOWA RAIL-WAY COMPANY *et al.*, Appellants.

| 82 | 369 |
|---|---|
| a89 | 710 |
| 82 | 369 |
| 92 | 598 |
| 82 | 369 |
| 94 | 609 |
| 82 | 369 |
| 96 | 407 |
| 98 | 420 |

1. **Railroads:** INJURY TO STOCK: RECEIVERS: LIABILITY. Where a railroad is being operated by a receiver, the receiver, and not the railroad company, is liable, under section 1289 of the Code, for the value of stock injured on the railroad company's unfenced right of way through the negligence of the railroad employes. Whether in an action to recover damages under such statute the railway company is a proper or necessary party, *quære.*

2. **Pleading:** PRACTICE: WAIVER OF DEFECTS. Where the facts alleged in a petition do not warrant the relief asked as against one of several defendants, the objection to the petition for this reason, will be deemed waived by such defendant if he fails to take advantage thereof either by demurrer or by motion in arrest of judgment.

3. **Railroads:** RECEIVER: INJURY TO STOCK: DAMAGES: NOTICE. Where a railroad is being operated by a receiver, the service of notice, in due form, of a claim for damages for an injury to stock upon the receiver and a station agent in the county where the stock was injured, is sufficient to entitle the claimant to recover of the receiver, under section 1289 of the Code, double damages for such injury, if payment is not made within thirty days after the service of such notice.

4. **Injury to Stock:** DAMAGES: EVIDENCE: VERDICT. In an action brought under section 1289 of the Code to recover damages for injuries to a mare running at large, it appeared, that the defendant's track ran east and west, and that the plaintiff's mare was found fast in the north end of the cattle-guard, outside of the north rail on an embankment of earth some feet from the track, with her back under the ends of the ties, her head to the west and her feet projecting upwards and outwards; that when found the mare had bruises and injuries on the left side of her body, neck and head, and some on her right side; and the evidence tended

to show that two trains passed west on the defendant's line early in the morning on the day the mare was thus found; that the signal for stock on the track was heard; that the trackmen came to help take the mare out; and that a horse's tracks were found in the snow, showing that some horse had come onto the grade east of the cattle-guard, and traveled west to within twelve or fifteen feet of the guard, where the tracks ended, and that no tracks were seen about the guard. *Held,* that a verdict awarding the plaintiff damages as provided in the above section was supported by the evidence.

*Appeal from Louisa District Court.*—HON. J. K. JOHNSON, Judge.

TUESDAY, FEBRUARY 10, 1891.

THE petition is entitled as above, and alleges that the "defendant is a corporation, incorporated under the laws of Iowa; that on or about December 20, 1886, at a point on a line of defendant's railroad, * * * a train of cars belonging to said defendant, Central Iowa Railway Company, while being run and operated by the employes of said defendant, was run against one black mare, about nine years old, the property of plaintiff, thereby injuring and damaging said mare to such an extent that she died." After alleging the value of the mare, that the right of way was not fenced at the point where she entered thereon, although the right existed, and that the mare was running at large, it is alleged that notice and affidavit, as required by section 1289 of the Code, "were served upon defendant, and defendant has wholly failed and neglected to pay said claim; that defendant, E. L. Dudley, is the receiver of the Central Iowa Railway Company, and claims to have some interest as such in this suit, and is, therefore, made one of the parties defendant." The plaintiff demands judgment "against said defendant" for double damages. The defendants answered separately, each denying generally, except as expressly admitted, admitting the corporate capacity of the company, that defendant Dudley is and was receiver of the Central Iowa Railway Company, and has had the control and possession of all the

property of said company since December 1, 1886, and, for want of knowledge or information sufficient to form a belief, deny that the right of way was not fenced at the point charged, and denying that the stock was running at large.  Upon the issues thus joined, the case was submitted to a jury, and a general verdict for the plaintiff, with certain special findings, returned.  The defendants' motion for a new trial being overruled, judgment was entered for the plaintiff on the general verdict, from which the defendants appeal.—*Modified and affirmed.*

*Anthony C. Daly* and *E. W. Tatlock*, for appellants.

*Newman & Blake* and *Fred Courts, Jr.*, for appellee.

GIVEN, J.—I.  It appears without question that the defendant, E. L. Dudley, was, at the suit of the Central Trust Company of New York, appointed by the circuit court of the United States, for the southern district of Iowa, receiver of all the property of the Central Iowa Railway Company, and was put into possession and custody thereof on December 1, 1886, and was operating said railway as such receiver at the time the injury complained of is alleged to have been committed, under the orders of said court.  The appellants contend that it is error to adjudge the defendant railway company liable, because it was not operating the railway at the time of the injury, and that "it is error to adjudge the receiver liable, for there was no issue upon which to base it. There was no averment of negligence of the receiver or his servants."  The liability, as provided in section 1289 of the Code, is against "any corporation operating a railway."  Section 1278 makes "all lessees or other persons owning or operating such railways" subject to all the duties and liabilities imposed by that chapter upon corporations owning or operating railways.  The

1. RAILROADS: injury to stock: receivers: liability.

liability of the receiver in this action, if properly charged, is not questioned, nor could it be successfully, in view of the sections of the Code just cited, and the uniform holding of the courts. High on Receivers, sec. 395 ; Beach on Receivers, secs. 721–723, and notes ; *Ohio & M. Ry. Co. v. Davis,* 23 Ind. 553 ; *Sloan v. Railroad,* 62 Iowa, 728; *Memphis & L. R. Ry. Co. v. Stringfellow,* 44 Ark. 322. In *Stephens v. Railroad,* 36 Iowa, 327, it is said : "It is eminently just and in accord with universally conceded principles of all sound jurisprudence, that every person shall be liable for his own wrong, but not for the wrongs of another with which he has no connection." In the same case it is said, in respect of the statute under which this action is brought : "The statute simply provides that, in the absence of fences, negligence shall be presumed." We have seen that the action is for a wrong, and that a person operating a railway as receiver is liable in such an action. The liability is against the corporation or person operating the railway, and the receiver was confessedly operating this railway at the time of the alleged injury. Surely both defendants could not be operating it at the same time ; therefore, both cannot be liable.

It is said that the possession and control of the receiver was as the representative of the company ; that, instead of operating the road through its officers and agents, it was doing so through its receiver. To so hold is to deny liability on the part of the receiver ; for, if the operation of the road was by the company, it could not be by the receiver. Officers and agents of the company were subject to its control, and their possession and acts were its possession and acts ; but not so as to the receiver. His possession and control were under orders of the court only. True, the company, like the creditors, had an interest in the manner in which the property was controlled and operated, and might move the court to order the manner of its management ; but that interest and that right to ask orders of the court did not make either the company or the creditors the corporation or person operating the

railway.   In *Railroad v. Davis, supra,* it is said:
"The possession of the receiver cannot, however, be
regarded as the possession of the railroad company,
but is in every view antagonistic thereto.   The receiver
is under the control of the court that appointed him,
and his possession is the possession of the court."   In
High on Receivers, section 396, it is said:   "Since the
receivers of a railway, who are vested with its absolute
control and management, are thus liable for injuries
resulting from negligence in operating the road, to the
same extent that the company itself might have been
held liable, it would seem to be clear, upon principle,
and in the absence of any absolute liability created by
statute, that the corporation itself cannot be held
responsible for the negligence of servants of a receiver
operating the road.   The receiver's possession is not
the possession of the corporation, but is antagonistic
thereto, and the company cannot control either the
receiver or his employes."   Such is the general, if not
uniform, holding of the courts.   Section 1289 does not
fix an absolute liability upon the defendant company.
Its liability is dependent upon whether it was operating
the road at the time the injury was caused.

It is suggested that, as the damages must be paid
out of the assets of the company, it is immaterial which
defendant the judgment is against, or that it be against
both.   If, as we have seen, the statute only makes one
liable, that is a sufficient reason why the other should
not be charged, and an additional reason is that the
receivership may be properly and separately managed
and accounted for from the affairs of the company.
Another reason given why the company should be held
liable is that a case might arise wherein the injury
occurred while the road was being operated by the
receiver, and he be discharged before an action could
be brought.   It is probably enough to say that such is
not this case.   We may add that the remedy of the
injured party is ample, in that he may prove his claim
to the court appointing the receiver, and have an order

for its payment as soon as the damages have been sustained.

We think the undisputed record leads to the conclusion that the Central Iowa Railway Company was not operating the railway at the time of the alleged injury, and is not liable therefor. We do not determine whether the railway company is a proper or necessary party to this action, as that question is not discussed, but only that it was error to enter judgment against the company for damages. We do not hold that the railroad company was not rightly joined in this action, and that relief authorized by law, as the enforcement of a lien under section 1309, or the like, cannot be granted in the action. But no such relief was sought in this case against the railroad company.

II. We next notice the claim of the receiver that there is no issue upon which to base a judgment against

2. PLEADING: practice: waiver of defects.

him; that "there is no averment of negligence of the receiver or his servants." If such is the proper construction of the petition, then the defect was apparent upon its face, and was ground for demurrer. Code, sec. 2648. Section 2650 of the Code is as follows: "When any of the matters enumerated as grounds of demurrer do not appear on the face of the petition, the objection may be taken by answer. If no such objection is taken, it shall be deemed waived. If the facts stated by the petition do not entitle the plaintiff to any relief whatever, advantage may be taken of it by motion in arrest of judgment before judgment is entered." In *Linden v. Green*, 81 Iowa, 365, it is held, that the provision that if no such objection is taken it shall be deemed waived, means that, if it is not taken by demurrer, when that is the proper mode, or by answer when that is proper, it is waived. The receiver neither demurred nor moved in arrest of judgment, but answered without questioning the right of the plaintiff to bring the action against him, and denying that the right of way was not fenced, and that the plaintiff's mare was running at large. A

motion for new trial is quite different from, and in no sense equivalent to, a motion in arrest of judgment." *Linden v. Green, supra.* The receiver, having failed to either demur to the petition or move in arrest of judgment, must be held to have waived the objections now urged against the sufficiency of the petition.

III. The appellee's right to recover double damage is questioned, upon the ground that there was no

<span style="float:left">3. RAILROADS: receiver: injury to stock: damages: notice.</span>

sufficient service of notice alleged or proven to entitle him thereto. The allegation is "that on April 5, 1887, the plaintiff had served upon the defendant a notice and affidavit in writing of the damages he had sustained, as provided by section 1289 of the Code." The testimony shows that an affidavit and notice in due form were served on the Central Iowa Railway Company and E. L. Dudley, receiver thereof, on April 5, 1887, by delivering the originals to W. R. Sterrett, the station agent of said Central Iowa Railway Company, and E. L. Dudley, receiver, at Morning Sun, Iowa. There is no dispute but that Morning Sun is in the county where it is alleged the plaintiff's mare was injured. Section 1289 authorizes the service of such notice to be made upon "any officer, station or ticket agent employed in the management of the business of the corporation in the county where the injury complained of was committed." We think the service was sufficient to charge the defendant liable in the action with double damage, as there was a failure to pay within thirty days. We may notice in this connection the appellant's complaint that the court erred in not submitting to the jury the issue as to the service of notice. The testimony, as we have stated it, was without conflict. There was no question of fact concerning the service. It was exclusively a question of law for the court, and, the court, holding the service to be legally sufficient, there was no question to submit.

IV. The appellant's further contention is that the evidence does not sustain the verdict. On the former

appeal (75 Iowa, 529), our understanding
4. INJURY to        from the testimony was that the mare was
  stock: dama-
  ges: evidence:   found in the cattle-guard in such a position
  verdict.
that a train could not have passed over her
without killing her, or injuring her in parts of her
body that showed no injury.  The testimony now
before us is more explicit as to the position in which
she was found.  It appears without question that at
the point of the accident the general direction of the
track is east and west; that the mare was found fast in
the north end of the cattle-guard, outside of the north
rail, her back under the ends of the ties, head to the
west, and feet projecting upwards and outwards, rest-
ing against an embankment of earth some feet from
the track, and that she had bruises and injuries on the
left side of her body and neck and head, and some on
the right side.  There is question as to whether a train
could have passed without striking the mare where she
lay, whether the injuries were such as would have been
made by an engine or cars striking her, and whether
she was struck by an engine or cars.  We are referred
to certain cases wherein this court held the evidence to
be insufficient.  In *Moore v. Railroad*, 72 Iowa, 75, the
charge was that the horse was driven into the cattle-
guard, and the only evidence was that there were
three horses together; that their tracks on the right of
way show that they were going fast both before the
cattle-guard was reached and afterwards.  The horse
was injured in the night-time, and no person saw the
occurrence.  There was also evidence tending to show
that a train passed over the road during the night.  In
*Asbach v. Railroad*, 74 Iowa, 248, the animal was killed
by falling from a bridge on the defendant's road.  No
one saw the accident.  The engineer testified that the
animal was not struck or thrown from the bridge
by his engine.  It was proven that all trains passed by
daylight.  The circumstances relied upon by the plain-
tiff were that the animal was liable to be frightened by
moving trains; that a train was stopped near the bridge
on an evening two or three days before he learned of

the injury; and that a witness near that date passed the bridge at three o'clock P. M., seeing no horse there, and again at a later hour, when he saw the horse lying dead at the bridge. The evidence of the stopping of a train is said to be "extremely unsatisfactory." In *Meade v. Railroad*, 45 Iowa, 699, the only testimony for the plaintiff was his own, wherein he said that he saw the train passing; that he commenced blowing at the horses, and they got frightened, and all took right down the track into the guards, which were closed in; that he did not see the train stop or slacken. "I did not see this mare go into the cattle-guard." The engineer testified that he blew the whistle, and the horses were frightened, and ran down the track, and then away from the track through an opening; that none were chased down to the cattle-guard; and that he could distinguish a horse half a mile on the track, and could not run upon one without seeing him, if he had been lying upon the track.

In this case, in addition to the testimony as to the position of the animal and the injuries upon her body, there is testimony tending to show that two trains passed west early that Monday morning; that the signal for stock on the track was heard; that the trackmen came for help to take the mare out; that horses' tracks were found in the snow, showing that some horse had come onto the grade east of the cattle-guard, and traveled west to within twelve or fifteen feet of the guard, where the tracks ended; and that no track were seen about the guard. The testimony as to the tracks is not contradicted, though there is much conflict as to whether two trains passed, and as to whether any signals were sounded. With this testimony as to the trains, the injuries upon the left side of the animal, and the position in which she was found, we cannot say there was no testimony from which the jury might find that the animal was struck by a passing train. Indeed, there is no other explanation of why the tracks of the animal were not traceable up to the cattle-guard. It is true the engineer of the passenger train that went west

that morning testifies that he did not strike any horse at that point, nor see one; but he shows upon his examination that it was possible for his engine or train to have struck one at that hour of the morning without his knowing it.

It is sufficient to say, without further discussion of the testimony, that it at least so supports the verdict that, under rulings of this court, the verdict as to the defendant, E. L. Dudley, should not be disturbed on that ground. Our conclusion upon the whole record is: that the judgment of the district court should be reversed as to the Central Iowa Railway Company, and affirmed as to E. L. Dudley, receiver. We may repeat that no question is made as to plaintiff's right to bring this action against the receiver, and we assume, therefore, that he does so by authority of the court appointing the receiver. MODIFIED AND AFFIRMED.