JOHN TAYLOR AND CITIZENS NATIONAL BANK OF DES MOINES v. F. M. GILBERT, Appellant, and HENRY E. YEOMANS *et al.*

**Description in Mortgage.** A mortgage recited that Y. of Warren county conveyed nineteen head of pure blood Herefords. It gave their names and attached numbers to some of their names; it also recited that the names were the names "recorded in the 'American Hereford Herd Book.'" The original of that publication is kept in Missouri. It contains many names in duplicate but no repeated numbers. The numbers are not attached till enough names are registered to make a book, which sometimes involves a delay of a year. *Held,* that as to a subsequent mortgagee, the description was too indefinite.

**Practice.** On foreclosure, the subsequent mortgagee asserted his mortgage to be paramount. The holder of the one first in time answered denying that assertion, and alleging his mortgage to be prior. He also interposed a cross bill and therein set out his mortgage, which cross bill was in no way assailed. *Held,* that as the filing of the answer made a complete issue, the failure to assail the cross bill did not waive the defective description in the mortgage set out in the cross bill.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, DECEMBER 14, 1894.

ACTION to foreclose a chattel mortgage executed by the defendant Yeomans to the plaintiff Taylor, and to establish a landlord's lien on certain chattels in favor of plaintiffs under a lease from Taylor to Yeomans. Defendant Gilbert answered, setting up a prior recorded chattel mortgage on part of the property, and claiming priority thereunder over plaintiff's mortgage and landlord's lien. The pleadings and exhibits thereto are quite voluminous, but, as the principal contention is whether the description of the property in the recorded mortgage to defendant Gilbert is sufficient to charge subsequent purchasers and incumbrancers with notice, the pleadings need not be more fully stated. Decree was entered in favor of the plaintiff, and dismissing defendant Gilbert's cross bill, wherein he asked a foreclosure of his mortgage. Defendant Gilbert appeals.— *Affirmed.*

*Guernsey & Baily* for F. M. Gilbert appellant.

*Cummins & Wright* and *Callender & Smith* for appellees.

GIVEN, J.—I. The mortgage under which appellant claims is in a form in common use, and shows on its face as follows: That it is from "Henry E. Yeomans, of Warren county, and state of Iowa," to "F. M. Gilbert, of Des Moines, Iowa, party of the second part," selling and conveying unto the party of the second part the following goods and chattels, to wit, nineteen pure blood Hereford cattle as follows: Beau Real 3d (male), Flora, Flora 2d, Flora 3d, Melody, Fair Maiden, Maiden Fair, Mowequa

Lass, Ida Monde, Grace, Buckfield Lass, Gipsy Maid and calf, Forelock 3d, Patience, Silk 7th, Gentle Polly 2d, Snow Flake, Silk 9. The above names are the names as recorded in the 'American Hereford Herd Book.'"' This court has been called upon many times to pass upon the sufficiency of the descriptions of property in chattel mortgages. It is seldom that cases are identical in their facts; therefore, guided by such general principles as are applicable, each case must be decided upon its own facts. In *Smith v. McLean*, 24 Iowa, 332, this general principle was announced, and has since been followed in all cases before this court. "It is true that there must be certainty in the description of the property, but '*id certum est quod certum reddi potest.*' Hence if, from the description contained in the instrument, the mind is directed to evidence whereby it may ascertain the precise things conveyed, if thereby absolute certainty may be attained, the instrument is valid. The rule may be stated in different words, thus: That description which will enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property, is sufficient." Guided by this rule, we proceed to inquire whether appellant's mortgage, upon its face, was sufficient to impart notice by the record thereof, to subsequent purchasers or incumbrancers, as to what property was covered thereby.

II. We do not understand appellant to claim that the statement "nineteen pure blood Hereford cattle," and the names and numbers that follow, are, taken alone, a sufficient description. He contends, however, that by the reference to the "American Hereford Herd Book" which follows, the case is brought within the rule announced in *Smith v. McLean*, quoted above. We gather from the evidence the following with respect to the manner in which this herd book is kept: There is an association known as

the "American Hereford Cattle Breeders' Association," with a secretary residing at Independence, Missouri. When a breeder desires to register pure blood Hereford cattle bred by him, he makes application to the secretary, giving such name to each animal as he chooses. When there are enough applications to make a volume, they are put in alphabetical order, and printed, a number being given to each name, and the volumes thus composed are distributed and sold to breeders and others. While the names may be duplicated, the numbers never are. As the animal does not get its number until sufficient is accumulated for a volume, it may be a year or more before the number is given. Upon the sale of cattle thus registered, the vendor forwards a bill of the sale to the secretary of the association, after which the cattle are registered as owned by the purchaser. This herd book now consists of twelve volumes, the original of which is kept in Independence, Missouri. It will be observed that no number is connected with several of the names appearing in the mortgage. It will be observed that, while Mr. Yeomans did not duplicate names, the names used by him were used by others; for instance, the name "Snow Flake," which appears without number in the mortgage, was duplicated in a herd on the Taylor farm. The witness Scarlet says: "The herd book does not show duplicates of all the names in the mortgage (Exhibit C). The following are not duplicated: Ida Monde, Mowequa Lass, Beau Real 3d, Melody, Silk 7th, Maiden Fair, Buckfield Lass, Gentle Polly 2d." The description contained in appellant's mortgage directs to the "American Hereford Herd Book" as the evidence whereby the precise thing conveyed may be ascertained with certainty, but, with the description and book in hand, where shall the inquirer go, as neither designates the cattle by location. It is argued that as the mortgage shows that Yeomans was of Warren county, that

the cattle were not to be removed from that county, that Yeomans was in possession, and that in case of sale it was to "take place on the farm in the county of Warren," the description must be held to apply to Hereford cattle in the possession of Yeomans in that county. As neither the mortgage nor the herd book tells where in that county Yeomans resided, nor where the cattle were kept, the identity of the cattle must be ascertained by yet further inquiry.

If the residence of Yeomans was ascertained, and pure blood Hereford cattle found in his possession in Warren county, still the identity is not shown. Let it be conceded that because of the recitations in the mortgage we are directed to Warren county, and to Hereford cattle owned and in the possession of Yeomans as the cattle mortgaged, yet with the description and herd book the identity is not made certain. True, numbers are never duplicated in the herd book, nor names by the same owner; but who can say which of Yeomans' Herefords, in his possession in Warren county, are these nineteen, and which is "Ida Monde" and which "Gipsy Maid?" As to the names appearing in the mortgage without number, the Hereford book furnishes but very slight evidence of identification, and but little weight should be given to those where the numbers in the book and mortgage correspond. We are clearly of the opinion that it is not the purpose of the law to subject subsequent purchasers and incumbrancers to pursue such inquiries as were necessary in this case to ascertain even approximately what property was intended to be covered by the mortgage to appellant. Certainty is easily attainable in such descriptions, and should be insisted upon for the protection of third persons. Most of the cases decided by this court have been cited, but we only find it necessary to mention the following. In *City Bank of Boone v. Raetky*, 79 Iowa, 216, 44 N. W. Rep. 362, cattle covered by the mort-

gage were described by the names as registered in the "American Shorthorn Herd Book," but the description was held sufficient upon other recitations therein. See, also, *Caldwell v. Trowbridge*, 68 Iowa, 150, 26 N. W. Rep. 49; *Hayes v. Wilcox*, 61 Iowa, 732, 17 N. W. Rep. 110; *Warner v. Wilson*, 73 Iowa, 719, 36 N. W. Rep. 719; *Manufacturing Co. v. Robinson*, 83 Iowa, 568, 49 N. W. Rep. 1031.

III. Plaintiff's filed their petition, as already stated, making appellant, Gilbert, a party defendant, as claiming "some interest in, or lien upon, some part or all of the property," and averring that his interest, if any, was junior to plaintiff's. Appellant answered, denying each allegation in the petition "save that this defendant admits that he holds a chattel mortgage upon, and claims an interest in and lien upon certain personal property at one time owned by his codefendant Henry Yeomans, which chattel mortgage this defendant avers is the first and paramount lien upon said property, and prior and superior to the liens of the plaintiffs, and of the codefendants of the defendant." He set up, by way of cross bill, his mortgage from Yeomans, and asked judgment against him, and for decree establishing his lien against the proceeds derived from the sale of the property covered by his mortgage. The property in controversy has been sold under stipulation, and the proceeds held to abide the result of this case. No answer or demurrer was filed to the cross bill, in which plaintiffs' mortgage was set out at length. Appellant contends that as his mortgage was fully set out, and as no demurrer was filed, plaintiffs must be held to have waived their right to assert that the cross petition did not state a cause of action, or, in other words, the sufficiency of the description in the mortgage. While other issues were joined by appellant's answer to plaintiffs' petition, the only one controverted on the trial was that of priority.

Appellant did not dispute the validity of plaintiffs' mortgage, nor the right to a landlord's lien, but claimed priority as to the property covered by his mortgage. Plaintiffs did not dispute the validity of appellant's mortgage as between the parties to it, but claimed priority over it because of insufficient description. These issues were joined by the petition and answer, and were tried thereon as though no cross bill had been filed. The case is clearly distinguishable from *Benjamin v. Vieth*, 80 Iowa, 149, 45 N. W. Rep. 731; *Linden v. Green*, 81 Iowa, 365, 46 N. W. Rep. 1108; *Brockert v. Railway Co.*, 82 Iowa, 369, 47 N. W. Rep. 1026; *Arndt v. Hosford*, 82 Iowa, 499, 48 N. W. Rep. 981; *McConahey v. Griffey*, 82 Iowa, 564, 48 N. W. Rep. 983,—cited by appellant. Our conclusion upon both questions discussed is that the decree of the district court should be AFFIRMED.