W. F. FLEMING, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., Appellants.

RAILROADS: Injuries to Animals—Evidence. Evidence reviewed, and held insufficient to show that damages were traceable to the operation of a railway.

*Appeal from Washington District Court.*—K. E. WILLCOCK-SON, Judge.

OCTOBER 25, 1918.

ACTION for damages to horses in passing over a cattle guard in defendant's right of way resulted in judgment for plaintiff. Defendant appeals.—*Reversed.*

*Eicher & Livingston, F. W. Sargent* and *J. G. Gamble,* for appellants.

*Brookhart Bros.* and *C. A. Dewey,* for appellee.

LADD, J.—The plaintiff leased a cornstalk field, adjoining defendant's right of way, for pasture, and turned his horses in about the middle of February, 1916. A gate in the right of way fence might have been found by the jury to have been out of repair. About March 9th following, the horses passed through onto the right of way, and, to the west, in going over a cattle guard therein, were injured thereby. It was a large, steel sheet-iron structure, with three-cornered prongs, several inches apart; and, of course, its purpose was to present a menace to stock, in order to prevent them from undertaking to cross over. The controlling question is whether the evidence was sufficient to support a finding that such injuries were consequent upon the operation of the railroad.

The plaintiff testified that, at about three o'clock in the afternoon, he was at his feeding lot, about a half mile·

from the cattle guard; that, about that time, a train passed; and that, after feeding his stock, he went into the pasture, and the horses were gone; he proceeded through the gateway to the west some distance, when he saw them about one-half mile west of the public highway, and took them home.

One Davidson swore that he saw the horses in the pasture, less than an hour prior to the time plaintiff was looking for them. A day or two afterwards, plaintiff found a piece of dirt on the cattle guard, which appeared to have been thrown from a horse's hoof. He testified that, after the train passed, several sharp blasts of the whistle were sounded, which differed from those for the whistling post or coal shute.

The engineer who was in charge of the engine swore to sounding the whistle at the post and when near the coal shute, once for each ton of coal required; and that he stopped the train and took on the coal; that, as he came to the side-track switch where the cattle guard was located, he noticed some horses west of the cattle guard, and that none were east of it; that they appeared to be grazing, with their heads down; but, as the train approached, they raised their heads, and started along the north fence.

"The inquiry," as was said in *Mikesell v. Wabash R. Co.*, 134 Iowa 736, "is that of sequence, not of foresight, and is directed to the determination of whether the damages to stock, as proven, are the proximate result of failure to fence, in connection with the operation of the road."

As the fence might have been found not to have been maintained as by law required, our only remaining inquiry is whether the jury might have found from this evidence that the injury to the horses was due in some manner to the operation of the railway. See *Young v. St. Louis, K. C. & N. R. Co.*, 44 Iowa 172; *Meade v. K. C., St. J. & C. B. R. Co.*, 45 Iowa 699; *Moore v. Burlington & W. R. Co.*, 72 Iowa 75;

*Asbach v. Chicago, B. & Q. R. Co.*, 74 Iowa 248; *Mikesell v. Wabash R. Co.*, supra. Though the train passed along the railway after the horses had left the pasture, it cannot be inferred from this alone that the train so frightened them that they ran onto the cattle guard. This would be mere matter of conjecture. There was no evidence, as of tracks, indicating that the horses were running as they approached the guard; and, if the engineer is to be believed, the horses were feeding on the other side of the cattle guard, as the train approached. No connection between the blasts of the whistle and the movements of the horses was inferable, even if these were not calls for coal to be ready at the shute.

The only other circumstance is the finding of the piece of dirt which might have been thrown from the horse's hoof; but there is nothing to connect this with the possibility of the horse's being scared by the approach of a train. The evidence, as a whole, is entirely consistent with the thought that the horses had passed over the cattle guard before the train approached it, and largely inconsistent with the theory that they were scared by its approach onto the crossing. That the horses might have been scared by the approach of the train, as said, is mere matter of conjecture, unsupported by the evidence.

But it is argued that the injury of the horses might have been attributed to the condition of the roadbed and cattle guard, which are said to have been dangerous to stock. It was intimated, in *Mikesell v. Wabash R. Co.*, supra, that a railway company might be liable where the injury is due to the construction of its roadbed and track, so as to render it, when not properly graded, peculiarly dangerous to such animals as may come thereon; but even if this were to be conceded, there is no evidence of the improper or dangerous construction of the roadbed and track; and for all that appears, the cattle guard was in a place where the company was required to maintain it; and there

is no evidence, that it was of improper construction. In these circumstances, it could not be said that the injury was due to these causes.

We are of the opinion that the evidence was insufficient to carry the issue to the jury, and the motion to direct a verdict for the defendant should have been sustained.— *Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.