### KERR v. WEST SHORE R. CO.

(*Supreme Court, Special Term, Ulster County.* August, 1888.)

1. RAILROAD COMPANIES—CONSTRUCTION OF ROAD—FARM CROSSINGS.
    Where a dock erected on that part of a farm bordering on a navigable river was acquired by a railroad company in condemnation proceedings as part of its right of way, and there was not sufficient land of the farm remaining beyond the railroad upon which another dock could be erected, the company could not be compelled to erect a crossing under Laws 1850, c. 140, § 44, requiring railroad companies to erect and maintain farm crossings.

2. SAME—OBSTRUCTION OF NAVIGATION.
    Where land under water granted to one by patent, reserving to the state the right of re-entry until the land shall have been appropriated to the purposes of commerce by the erection of a dock thereon, is acquired after the erection of a dock and before re-entry by the state by a railroad company in condemnation proceedings, the company has the right to obstruct navigation to the extent required to build its road.

3. SAME—DUTY TO RESTORE WATER-COURSE.
    A bay over which a bridge is constructed by the company having been previously navigable by flat-boats and scows only, and navigation by such boats not being impeded by the bridge, the company has sufficiently complied with Laws 1850, c. 140, § 28, subd. 5, requiring a railroad company to restore any water-course intersected by its railroad "to its former state, or to such a state as not unnecessarily to have impaired its usefulness."

4. SAME—REMOVAL OF OBSTRUCTIONS—ACTS OF CONTRACTOR.
    Obstructions to navigation by piles within the limits of the right of way must be removed by the company, and it cannot evade liability by showing that they were placed there by a contractor.

5. PUBLIC LANDS—RESERVATION IN PATENT—SUBSEQUENT GRANT—RE-ENTRY BY STATE.
    A subsequent patent to the railroad company for the land, on which the former patentee had not erected a dock, amounted to a re-entry by the state and divested his title.

6. SAME—GRANT TO RAILROAD COMPANY—DECISION OF STATE OFFICERS—REVIEW.
    The grant of lands under water for railroad purposes being authorized by Laws 1850, c. 140, § 25, the decision of the state officers in issuing such subsequent patent cannot be reviewed in an action between the company and the former conditional patentee.

7. JUDGMENT—RES ADJUDICATA—NUISANCE—CONSTRUCTION OF RAILROAD.
    After an adjudication in condemnation proceedings that a railroad company, on paying a specified sum, shall become the owner of certain lands for the purpose of building a railroad upon them, the former owner, who was a party to the proceedings, cannot allege that the railroad which was accordingly built is a nuisance, the matter being *res adjudicata.*

8. EMINENT DOMAIN—COMPENSATION—AWARD OF DAMAGES—PRESUMPTION.
    It having been known before the proceedings were completed how a bridge across a bay traversing the land appropriated was to be built, and no claim for a draw-bridge having been made, it will be presumed that the damages awarded included compensation for the injuries caused by the bridge, and the owner cannot afterwards require the company to build a draw-bridge.

Action by Charles Kerr against the West Shore Railroad Company to compel defendant to restore a road and water-course, the usefulness of which is alleged to be impaired by its embankment and bridge.

*William Lounsbery,* for plaintiff.     *F. L. Westbrook* and *J. N. Fiero,* for defendant.

PARKER, J.  The plaintiff is seized and possessed of a farm of land situate on the west shore of the Hudson river, in the town of Marlborough, Ulster county.   This farm has a frontage of about 4,000 feet on the Hudson.   For the land under water between high and low water mark letters patent were granted to the plaintiff on the 5th day of January, 1876.   The letters patent recited that the grant is made, "excepting and reserving to all and every the said people the full and free right, liberty, and privilege of entering upon and using all and every part of the above-described premises in as ample a manner as they might have done had this power and authority not been given, until the same shall have been actually appropriated and applied to the purposes of commerce by erecting a dock or docks thereon, or for the beneficial enjoyment of the same by the adjacent owner."   Pursuant to the authority granted by such letters, the plaintiff or his predecessors in title erected docks along the southerly portion of said water, to which a way or road led from the limekilns and cement quarries situate on said farm, as well as from other portions of it.   Prior to some time in the year 1882, vessels navigating the Hudson river were accustomed to land at this dock and discharge coal and other commodities of which the owner of the premises had need, and to receive cement, lime, and moulding-sand for transportation to market, all of which were hauled over the road leading to the dock.   Some distance north of the dock or docks, but in front of the premises of the plaintiff, is a bay or arm of the Hudson, extending to the mouth of a small stream known as "Jew's Creek," up which stream the tide ebbs and flows for a short distance.   Until some time in the year 1885, there was no dock or wharf in this bay or cove, and not for many years, if ever, has this bay been used by steam or sail vessels for the purpose of trade. In the year 1881, the New York, West Shore & Buffalo Railway Company was duly incorporated as a railroad company under the laws of New York.   The line of its road was located over and across the lands of this plaintiff, some portions of it including lands under water granted to Kerr by the letters patent aforesaid.   Such line embraced a strip of land 99 feet wide and extending the full length of plaintiff's premises.   February 16, 1882, said railroad company received from the state letters patent purporting to grant to it, among other things, the land under water in front of plaintiff's premises, now owned and occupied by its successor, this defendant, for railroad purposes, and being the same premises described in the surveys and maps filed in the Ulster county clerk's office describing the original location of the line of its railroad.   Subsequently, and in May of the same year, in accordance with the provision of the statutes in such case made and provided, said railroad company made an application to the court to acquire the title of this plaintiff and others in and to said lands and premises, and such proceedings were thereafter had as resulted in an award by commissioners duly appointed that the compensation that the "railroad ought justly to make for the real estate in question is the sum of $3,000."   The award thus made was confirmed by the court, and the money paid by the railroad company as provided therein.   From the order confirming the appraisal and report of the commissioners an appeal was taken by this plaintiff to the general term of the supreme court, which court affirmed the order appealed from.   The right of way thus acquired included within its limits all of plaintiff's docks, and so much of plaintiff's way or road leading to the dock as was embraced within the 99 feet.   In the construction of its road-bed, the grade was established at about nine feet above the level of the road and dock, and the plaintiff claims that such embankment prevents him from using his road in the hauling of goods, wares, and merchandise to the river for transportation, as he was accustomed to use it prior to its construction, and asks the judgment of the court that it be declared a nuisance, and

the defendant enjoined and restrained from maintaining the embankment in such manner as to impair the usefulness of the road leading to the water channel of the Hudson. In constructing the road across the cove or bay, piles were driven 14 feet apart from center to center and then filled in for the greater part of the way, except opposite the point where Jew's creek emptied into the bay, and there an iron bridge a little over 70 feet in length was placed. From the base of the rail on this bridge to high-water mark was about 8 feet, and from the bottom of the bridge cords to high-water mark, a little over 4 feet. The road-bed and track were completed at this point about the beginning of the year 1883. This defendant acquired title to the property in the year 1885, under and by virtue of a judgment of foreclosure, and sale and proceedings had thereafter pursuant to statute. About that time, and in the year 1885, the plaintiff commenced the erection of a small dock or wharf inside of the cove, to be used in the shipment of sand, of which his lands contain a large quantity, and of superior quality for brick-making purposes. From this dock the sand is loaded on scows carrying from 45 to 50 tons, and drawing from $2\frac{1}{2}$ to 3 feet of water. The scows are taken out of the cove under the iron bridge, and the sand is then shoveled into larger vessels and taken to market. This method of transportation is much more expensive than it was prior to the building of the road, when it was taken into the lower dock and loaded into the large vessels direct. At low tide the water at the sand dock is about 8 inches deep, and at high tide from $3\frac{1}{2}$ to 4 feet. Under the bridge the water is about 4 feet deep at low tide and about 7 at high tide. The plaintiff in his complaint alleges that such embankment unnecessarily impairs the navigation to the dock of the plaintiff at or near the mouth of Jew's creek, and prays that the defendant be required to restore the water channel as it was before the filling in.

The remedy of an owner of land crossed by a railroad for a failure to discharge its statutory obligation to such owner is not confined to an action for damages, but may be enforced in equity, and the performance of the duty compelled by a mandatory injunction. *Jones* v. *Seligman,* 81 N. Y. 190; *Wademan* v. *Railroad Co.,* 51 N. Y. 568. When, as in this case, so far as the docks are concerned, a railroad has acquired the right of way either by purchase or proceedings to condemn, and payment made, it owes no other or further duty to the former owner than such as is imposed by statute. If, then, this defendant is under any statutory obligation to provide a crossing for the plaintiff at the dock, he is entitled to the relief demanded in such respect; otherwise, not. Subdivision 5 of section 28 of the general railroad act (chapter 140, Laws 1850) requires a railroad which constructs its road along or across a highway to restore the highway "to its former state, or to such a state as not unnecessarily to have impaired its usefulness." The evidence in this case does not warrant a finding that the road in question was a public highway; therefore the provision of the statute does not apply. The only other provision relating to crossing is contained in section 44 of the same act, which provides, among other things, that a railroad corporation "shall erect and maintain farm crossings of the road for the use of the proprietors of the land adjoining such railroad." Even if the plaintiff had a dock upon which he could go after crossing the property of the railroad, it is not clear that the court would be justified in holding the *locus in quo* to constitute a farm crossing within the letter or spirit of the act. It is unnecessary, however, to pass upon that question in the case. The object and intent of the provision of the statute requiring the maintenance of farm crossings is plain. It is to enable the owner of lands separated in two or more parcels to pass from one parcel to the other for the purpose of husbandry with loaded or empty wagons. The crossing is required to be made for his benefit, and not for the purpose of imposing a useless burden upon the railroad company. And when it is clear that the crossing cannot be used by the owner; that he

has not any property on which to go after the crossing is made,—the court will not decree that the railroad waste its resources in building impracticable and useless crossings. In this case, the railroad have acquired, by legal proceedings, and paid for, the docks in question. The docks belong to it. The plaintiff has no title to or interest in them. Beyond plaintiff's boundary are the waters of the Hudson river. The plaintiff has no dock there upon which .he could go if he had a crossing. Neither has he sufficient lands under water at that point upon which a dock could be erected. A crossing, therefore, would be of no benefit to him, and would simply impose a fruitless burden upon the company. Under such circumstances, a court of equity will not decree that a crossing be erected and maintained.

Neither is the plaintiff entitled to a decree declaring the embankment, trestle work, and bridge extending across the cove, or any part of it, a nuisance. Assuming the plaintiff to have been the owner of the land under water, after the grant by the state to the company of February 16, 1882, still, as between the plaintiff and this defendant, the question of the right of the company to build its railroad where it is at present located is *res adjudicata.* The company instituted proceeding to acquire plaintiff's interest in such lands in the manner authorized by statute. The plaintiff was a party to the proceedings. He had his day in court,—the opportunity to make any and all legal objection which he might desire. Those proceedings resulted in an adjudication by the court to the effect that the company, as against this plaintiff and all other parties to that proceeding, on payment of $3,000, should become the owner of the land in question for the purpose of building a railroad thereon. That adjudication, unless reversed, determined finally the rights of the parties; subject, of course, to the statutory obligations imposed upon the defendant in the construction of its road. This plaintiff in that proceeding availed himself of the right of appeal, and the adjudication of the court below was affirmed. The rights of the parties having been passed upon and determined by a court of competent jurisdiction, the plaintiff cannot be permitted in a collateral action to attack or affect such prior and direct adjudication.

Were it competent for the court in this action to review the question of the railroad company's right to build a road across the cove,—a proposition I deny,—it would of necessity result in an affirmance of the right. The title to lands under tide-waters are vested in the state, and held by it in trust for the people; but the legislature, as the representative of the people, may grant the sale or confer an exclusive privilege in tide-water, provided the right granted does not trench upon the powers granted to congress. *People* v. *Tibbetts,* 19 N. Y 523; *People* v. *Canal Appraisers,* 33 N. Y. 487. The state may for the purpose of commerce partially hinder navigation, by authorizing the construction of docks, piers, bridges, and railroads, which are declared (*Canal Co.* v. *Lawrence,* 2 Hun, 163) to be included in the demands of commerce, to which navigation is in a degree subject. The legislature by proper enactment (1 Rev. St. 7th Ed. p. 573, § 67) conferred upon the commis oners of the land-office authority to grant, in perpetuity or otherwise, lar is under water. This power must be exercised for the benefit of the public and by the letters patent issued to this plaintiff in 1876 the state gave authority to build docks along and upon the lands under water described in the grant, and decided that to such extent the interest of commerce justified the hindering of navigation,—the state reserving the right of re-entry at any time "before the same shall have been actually appropriated and applied to the purposes of commerce by erecting a dock or docks thereon," etc. Assuming that at the time of the instituting of the proceedings to condemn the lands of the company there had been no re-entry by the state, then we have a determination on the part of the state that the lands in question shall be devoted to commerce, and a grant to this plaintiff for that purpose; and the case is

exactly parallel with *Railroad Co.* v. *Walsh*, 27 Hun, 57, in which case the court holds that the obstruction to navigation is legalized, and that Walsh may sell to any one the right to destroy the navigation within the limits of the grant. What Walsh can sell can be taken from him by condemnation, upon payment of its value. The doctrine thus enunciated was approved by the court of appeals, although the case was reversed upon a question of practice. 89 N. Y. 453. Within the rule laid down in the case cited, if the plaintiff was the owner of the land under water, by the proceedings to condemn the railroad company acquired the right to obstruct navigation to the extent required to build its road. The grant to the plaintiff, however, contained a reservation on the part of the state of the right, liberty, and privilege of entering upon and using the lands at any time before their appropriation to the purposes of commerce by the erection of a dock, etc. The state had the right to thus limit the grant. The power to grant, in perpetuity or otherwise, is expressly confirmed. Rev. St. (7th Ed.) p. 573, § 67. So, also, is the authority to prescribe the form of the letters patent. Id. p. 560, § 5. The plaintiff did not avail himself of the right to erect a dock across the cove, and on the 16th day of February, 1882, the state granted to the railroad company by its letters patent the lands under water occupied by it. The authority to convey lands under water for railroad purposes was vested in the land commissioners by section 25 of chapter 140, Laws 1850. This grant amounted to a re-entry on the part of the state, by which the plaintiff became divested of all title to so much of the lands under water taken by the railroad company as had not been docked. By this grant the company acquired the authority to occupy the land for railroad purposes, and the action and decision of the state in such respect, by its properly constituted officers, cannot be reviewed in this action. It is clear, therefore, that the defendant's title to the land, as well as its right to build a railroad thereon, could not be questioned, were it open to review; for, if the title was in Kerr, the defendant's predecessors in title acquired such title and the right to construct its road by proceedings to condemn; while, if, on the other hand, Kerr's title was divested by the re-entry on the part of the state, the company obtained the title and rightful authority to build the road from it.

While the authority to construct the road was lawfully obtained, coupled with it was the statutory obligation to restore "any stream or water-course, street, highway, plank-road, intersected or touched, to its former state, or to such a state as not unnecessarily to have impaired its usefulness."

It is claimed on the part of the plaintiff that from a given point in Jew's creek out to the channel of the Hudson the creek and bay constituted a public highway, which the company was bound to restore so as not unnecessarily to have impaired its usefulness. The company seem to have recognized this claim; for in constructing the railroad it caused to be erected a bridge about 70 feet long, at a point nearly opposite the mouth of Jew's creek, under which plaintiff has towed flat-boats loaded with sand. This the plaintiff alleges does not adequately restore the highway, and that nothing less than a draw-bridge will. The statute prohibits the construction of a bridge across any stream navigated by steam or sail boats. This stream was not so navigated; therefore the company was under no obligation to build a draw-bridge, unless the court should decree it to be necessary that it should be done in order to restore it to "its former state, or to such a state as not unnecessarily to have impaired its usefulness." In the proceedings taken to condemn, no claim was made on the part of the plaintiff for a draw-bridge. Compensation was sought for injuries which the owner would sustain because of the building of the road across the cove. Before the proceedings were completed, the road was nearly constructed, and it was known by the parties when and how the bridge was to be built. It was the duty of the commissioners appointed by the court, in fixing the amount of compensation to be paid the owner, to take in con-

sideration how the taking of the land would affect the residue of the owner's land,—whether it would be left in an inconvenient, unmarketable shape. *Henderson* v. *Railroad Co.*, 78 N. Y. 423. The appraisal embraces all past, present, and future damages which the improvement may thereafter reasonably produce. Mills, Em. Dom. § 216. The presumption of the law is that the commissioners did their whole duty, and took into consideration every species of injury and damages which would result to plaintiff and his lands by the building of the road. *Furniss* v. *Railroad Co.*, 5 Sandf. 550. As he has been compensated in money for the injury, it would be clearly inequitable and unjust to compel the company to build a draw-bridge for him in addition; and for that reason, if there were no other, the relief demanded ought not to be granted. Beyond that, I regard the building of the bridge as a substantial compliance with statute requiring the restoration of highways. The statute does not contemplate the restoration in all instances to their former condition, because of necessity there must be cases when it is not possible to do so. Neither does it contemplate so perfect a restoration as not to impair its usefulness somewhat; but care must be taken that it does not unnecessarily impair it. Now, this highway at the time of the building was not navigable for steam or sail vessels; it could not be navigated by such vessels now, if there were no bridge to obstruct their passage. Then, as now, the bay or cove was only navigable by flat-boats or scows drawing from two and a-half to three feet of water, and other small boats, and such boats can pass under the bridge without great difficulty. The practical usefulness of the highway is not, therefore, unnecessarily impaired by the bridge,—certainly not so greatly impaired as would be the defendant's highway, which has to provide for the safety of the traveling public, were a draw-bridge to be substituted in the place of the present bridge; and the defendant ought not to be required to construct and maintain one.

The evidence shows that in front of the bridge, and within the 99 feet owned by the defendant, there are piles protruding above the ground a foot or more, which interferes, the plaintiff claims, with the proper use of the highway. The defendant insists that it is not responsible, because they were placed there by the contractor, and not by it or its predecessors. It cannot thus evade liability. Its statutory duty is to restore streams, highways, etc. Whether it placed piles there or not, it maintains them; and if it in any way interferes with the usefulness of the highway, it has failed to restore the highway in that respect so as not unnecessarily to have impaired its usefulness. The plaintiff is entitled to a judgment directing the defendant to remove such obstructions. All other relief demanded in the complaint, refused.