JOHN W. SHOTWELL *et al.*, Respondents, v. THE ST. JOSEPH AND ST. LOUIS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1889.

Railroads: FENCING RIGHT OF WAY. Where defendant has operated its road for years through a field, and has never built fences along the sides of its right of way, but only placed a cattle-guard at its entry into such field, and in repairing and improving its road bed and track, it removes said cattle-guard for a week or more, and stock passed into said field and destroyed the crop, defendant is liable under section 809, Revised Statutes, 1879, and cannot defend by the fact it kept a watchman there, or on the theory that it is entitled to a reasonable time to repair fences along the right of way, after the discovery of defects.

*Appeal from the Ray Circuit Court.*—Hon. James M. Sandusky, Judge.

Affirmed.

Statement of the case.

This is an action under section 809, Revised Statutes, 1879, to recover damages for injuries to a crop of corn done by stock escaping from defendant's unfenced right of way. The suit was commenced before a justice of the peace where plaintiffs had judgment—was appealed to the circuit court, where, on trial anew, plaintiffs again recovered, and defendant has appealed to this court.

The material averments of the petition are as follows: "Plaintiffs further state that the railroad of defendant passes through a field of standing corn on the southwest quarter of section nine in township fifty-one of range twenty-seven in Richmond township, Ray county, Missouri, a little north of Lexington Junction, in said county, all of which corn was owned by plaintiffs except three or four acres in the southeast corner of the field owned by one Mansfield Gordon; that said field was enclosed with a fence all around it, and where the railroad passed into the field was a cattle-guard to protect said field from stock; that about the fifteenth of November, 1887, defendant, by its agents and servants, tore out said cattle-guard and partitions of the fence on each side of the railroad, and permitted it to remain open and in a condition that the said stock could pass into said field without hindrance or obstruction for the space of two or three weeks; that during that time stock passed through said opening into said field, and destroyed corn belonging to plaintiffs to the value of seventy-five dollars; plaintiffs say that said railroad was not fenced on the side thereof through any part of said field, and that defendant failed to maintain said cattle-guard at the entrance of said field and to erect fences

on the sides of said road, and, for want of said cattle-guard and fences and the acts and doings of the agents and servants of defendant, cattle and other stock passed through said opening, and destroyed corn as aforesaid to the value of seventy-five dollars. That by reason of the premises aforesaid plaintiffs say they are damaged in the sum of seventy-five dollars, for the double of which they ask judgment, according to the statute in such case made and provided, and for all proper relief.'' The court, of its own motion, gave the following instructions :

(1) If they believe from the evidence that the plaintiffs owned an enclosed field of corn in the south-west quarter of section 9, township 51, range 27, in Richmond township, Ray county, Missouri, in the year 1887, and believe that said field of corn was not within the limits of an incorporated town, and believe that defendant's railroad at said time ran through said enclosed fields, and believe that defendant had failed to build any fence along either side of its right of way, where it runs through said field, and believe that by reason of defendant's failure to build and maintain fence along its right of way through said field, cattle and other stock strayed and escaped from defendant's right of way into said field of corn, in said year 1887, at the point where said right of way entered said field of corn, and injured or destroyed plaintiff's corn, then the jury will find for the plaintiffs and assess their damage at such sum, not exceeding the amount claimed, as the evidence may show their corn was injured by said cattle and stock.

(2) Unless the plaintiffs, by a preponderance of testimony, have established the matters set out in the first instruction to the jury, they should find for the defendant.

(3) If the jury find for the plaintiffs, they cannot assess against defendant any damages which may have

been done to the corn by cattle or other stock breaking into the field through plaintiff's fence, but only such damages as may have been done by stock escaping into plaintiffs' corn from defendant's right of way, where it enters or passes through said field, from a failure on defendant's part to fence its right of way where it passes through said field.

The defendant asked the court to give certain instructions which were refused.

From the testimony it appears plaintiffs' field, consisting of one hundred and forty acres, is situated immediately north of the station on defendant's road designated by the witnesses as the "Junction," and that defendant's road passes through the same in a northerly direction. Although thus constructed for several years there was never, up to the time of the damage complained of, any fence erected along the right of way through plaintiffs' field, but on the south side, where the railroad entered the field, defendant had maintained a cattle-guard, which joined to the fences on on either side was the only barrier against stock entering on defendant's right of way, where it passed through plaintiffs' field, and thence into said field. During the months of October and November, 1887 defendant, while constructing a side track on this right of way through the plaintiffs' field, tore out the cattle-guard and short spans of fencing connecting with the adjacent fences, and thereby exposed the field of corn to the incursions of stock from the commons.

Plaintiffs' witnesses testify that the premises remained in this condition for quite two weeks. Defendant admits it so remained for about eight to ten days. There was evidence tending to show that cattle broke into plaintiffs' field over their own inferior fencing, and it would appear from the verdict of the jury that they found that a *portion* of the damages arose from that source. It is undisputed, however, that stock did invade the corn field from the right of way.

*G. Lathrop, C. T. Garner, Sr., & Son, S. W. Moore,* for the appellant.

(1) The statement filed with the justice must allege, by direct averment or by necessary implication, that the injuries complained of did not occur within the limits of an incorporated city, town or village. *Nance v. Railroad,* 79 Mo. 196; *Schultz v. Railroad,* 76 Mo. 324. (2) A railroad company in the original construction of its road, or in the subsequent extension or repair thereof, is allowed a reasonable time within which to construct fences. The court's instruction number one ignored this, and was therefore erroneous. *Mayberry v. Railroad,* 83 Mo. 667; *Young v. Railroad,* 82 Mo. 427; *Morris v. Railroad,* 79 Mo. 367; *Rutledge v. Railroad,* 78 Mo. 286; *Silver v. Railroad,* 78 Mo. 528; *Clardy v. Railroad,* 73 Mo. 576. (3) Instruction number one, asked for by defendant, stated the law correctly, and should have been given. *Silver v. Railroad,* 78 Mo. 528. (4) It was neither averred nor proved that the place, where the alleged damage occurred, was not within the limits of an incorporated city, town or village. This is a fatal defect. (5) The statement is defective in not averring that plaintiffs are adjoining land-owners, or otherwise alleging facts from which a duty to fence would arise in favor of plaintiffs. The statute is for the benefit of adjoining land-owners. *Ferris v. Railroad,* 30 Mo. App. 124; *Berry v. Railroad,* 65 Mo. 172; *Harrington v. Railroad,* 71 Mo. 384; *Johnson v. Railroad,* 80 Mo. 620; *Bushy v. Railroad,* 81 Mo. 49; *Stanley v. Railroad,* 84 Mo. 631; *Peddicord v. Railroad,* 85 Mo. 160; *Carpenter v. Railroad,* 25 Mo. App. 110; *Smith v. Railroad,* 25 Mo. App. 113.

*John W. Shotwell* and *James E. Ball*, for the respondents.

(1) The petition states a good cause of action, and it is not necessary to allege that a field of one hundred and forty (140) acres is not within the limits of an incorporated town or city, the petition averring that the field lay north of Lexington Junction. *Tickell v. Railroad,* 90 Mo. 296, and authorities there cited; *Ringo v. Railroad,* 91 Mo. 667; *Mayfield v. Railroad,* 91 Mo. 296, and authorities cited; *Maze v. Railroad,* 87 Mo. 278. *Nance v. Railroad,* 79 Mo. 166, and *Schultz v. Railroad,* 76 Mo. 324, cited by appellant in their brief do not apply to the facts in this case. (2) The court was right in giving the first instruction asked for by plaintiffs. Defendant was bound to fence their right of way, and are responsible in double damages, under section 809, Revised Statutes of 1879 of the state of Missouri, for all damages done to the crops in said field by stock escaping from the right of way on the same, and were responsible the moment they took away the fence and cattle-guard on the south side of plaintiffs' field, by stock coming into said field through said opening. *Silver v. Railroad,* 78 Mo. 528; *Rutledge v. Railroad,* 78 Mo. 286. (3) Instruction number one asked for by defendant was properly refused by the court. See authorities cited above. (4) The petition avers that the plaintiffs owned the crop in the field through which said railroad passes, and the proof shows that plaintiff Shotwell was the owner of the field, consequently it was not necessary to aver in the petition that they were adjoining land-owners.

GILL, J.—I. There can be no doubt as to the sufficiency of the plaintiffs' complaint. *Williams v. Railroad,* 80 Mo. 597; *Tickle v. Railroad,* 90 Mo. 296; *Ringo v. Railroad,* 91 Mo. 667. These decisions furnish a complete answer to points 4 and 5 of defendant's brief.

II.   The other points urged in brief of counsel, for a reversal of this case may be answered by review of the court's action in refusing to give defendant's instruction number 1, which reads as follows :

"1.   The court instructs the jury that the defendant had the legal right to build and erect side tracks and switches, and to change and remove its main track and to change or remove its cattle-guard on its right of way along its road, and if the jury believe from the evidence that it was necessary for the defendant to erect and build side tracks and switches and remove its main track in order to conduct and carry on its business at Lexington Junction, and that, by the erection of said switches or side tracks, it was rendered necessary to remove its cattle-guard where the railroad entered the field of plaintiff Shotwell, and if the jury find from the evidence that. the fence was opened across defendant's right of way, where the railroad enters the field of said plaintiff Shotwell, only for the purpose of erecting said switches and side tracks, and changing the main track of defendant's road, and the said fence was kept open long enough to erect said switch and side tracks, and change the main track of said road, and further believe that said side track and switches and change of main track, and change of cattle-guard, was made and completed without unnecessary delay, and further find that defendant used reasonable care, prudence and diligence, in making said switches and side tracks and change of main track and removal of cattle-guard, to prevent stock from entering the field of plaintiff at the opening of said fence where it crosses defendant's right of way, then there was no failure on the part of defendant to construct or maintain fence or cattle-guards in this case within the meaning of the law, and the jury will find for the defendant."

This instruction is evidently framed on the theory of law, declared by repeated decisions in this state, that

railroad companies will be permitted reasonable time to repair fences along the right of way, after discovery of defects, or after such condition might have been discovered by the exercise of reasonable care. Hence it is insisted, that, as the necessity arose to tear out the cattle-guard, in order to construct needed side tracks and switches at the point where defendant's road entered the field of plaintiffs, then defendant had a reasonable time to put in such side tracks and replace the switch, which if done was a complete defense to plaintiffs' action.

This case, however, rests upon no such limited ground. Plaintiffs' ground of complaint is not so much on account of the absence of the cattle-guard as the absence of a fence along defendant's right of way, where it passed through plaintiffs' corn field. It seems there never had been any fence erected along this right of way through plaintiffs' field, but to avoid this, for sake of economy likely, the railroad company had put in a cattle-guard at point of entry, thereby to shut out cattle from the right of way and hence protect plaintiffs' field from invasion, of stock. The cattle-guard was a cheap substitute for the fence required by the statute. Immediately upon the opening of this railroad through plaintiffs' field, an imperative duty was imposed on defendant to erect and maintain a lawful fence on both sides of the right of way.

But this duty was not performed, and hence when cattle got upon the right of way, by reason of casting out the cattle-guard, a clear way was opened for incursions into plaintiffs' corn field.

The rule that the railroad company had time to repair has no application, since there had never been any fence, at any time, along the right of way through plaintiffs' premises. *Morris v. Railroad*, 79 Mo. 367. The obligation to fence was concurrent with the necessity which arose at the instant the road was opened up through

this field. *Silver v. Railroad,* 78 Mo. 528 ; s. c., 21 Mo. App. 5.

Defendant's road master, Noland, testified : "The company did not have any fence on the east and the west side of the track along their right of way through this field. There never had been any fence. We could have built fences along the right of way through the field, but we put a watchman there. We did not know the right of way. I did not think it necessary to fence the right of way as I had put a watchman there. Stock could not have gotten in very well if we had fenced the right of way."

But the plaintiffs were entitled to a *lawful fence* along the sides of the right of way,—the statute law so provides. It is no defense to say that a *watchman* was placed on guard instead. Neither is there *a shadow* of reason to claim, as suggested, that the work of constructing these side tracks could not have been prosecuted on a fenced right of way.

The court very properly refused defendant's instruction, quite intelligently and clearly informed the jury as to the law of the case, and we can discover no reason for disturbing the judgment. It is therefore affirmed. All concur.

