RAY STEVENSON, Appellant, v. ATLANTIC & NORTHERN RAILWAY COMPANY, Appellee.

**RAILROADS: Failure to Fence—Extent of Liability.** Liability of a railway for failure to maintain proper fences along its right of way is not limited to stock *killed* or *injured,* but may extend to other losses which are the proximate cause of such failure: i. e., loss occasioned by stock's wandering away and becoming lost. (Sec. 2057, Code Supp., 1913.)

*Appeal from Cass District Court.*—THOMAS ARTHUR, Judge.

DECEMBER 19, 1919.

ACTION at law to recover the value of certain live stock alleged to have been lost by reason of the defendant's failure to maintain a fence between its right of way and the farm occupied by plaintiff. A demurrer to the sufficiency of the petition having been sustained, plaintiff elected to stand upon his pleading as filed; and, as he refused to amend or plead over, judgment was entered against him for costs, and he appeals.—*Reversed and remanded.*

*H. M. Boorman,* for appellant.

*W. A. Follett,* for appellee.

WEAVER, J.—The plaintiff alleges that, during the year 1916, he was the lessee in possession of certain farm land in Cass County; that said land was bounded on its south side by the right of way and tracks of the defendant railway company, and was enclosed by a good, substantial

fence; that the fence forming the south side of the enclosure was built and maintained by the defendant company along the north side of its right of way, and was relied upon by plaintiff to keep and restrain his live stock within said enclosure, where he was pasturing a herd of steers; that, on several occasions in August of that year, defendant's employees negligently took down or removed a portion of said fence, and by reason thereof, his cattle escaped; and that, when they had been recovered and returned to the pasture, plaintiff at once notified the defendant's section boss and station agent at the nearest station, and demanded that the fence be maintained in proper repair, and both said servants and representatives of the defendant promised to give the matter proper attention; that plaintiff, relying on said promise, left his cattle in said enclosure, but, on a later day in the same month, defendant's servants and employees again threw down the fence, and permitted 33 of plaintiff's steers to escape and stray away; that plaintiff pursued and recovered possession of all of said herd except 3, which, after thorough search, he has been and still is unable to find. For the loss thus sustained, plaintiff asks a recovery of damages.

To this petition the defendant demurred, on the ground that, while the statute, Code Section 2055, makes a railway company liable to the owner of live stock killed or injured in the operation of its road by reason of such company's failure to protect its track with fences and cattle guards, as provided by law, it imposes no other liability whatever for such failure, and, as the plaintiff herein does not allege that the animals lost were killed or injured upon the railway track, or by the operation of the company's cars or trains, it fails to state a cause of action.

The trial court sustained the demurrer, and, plaintiff electing to stand on the petition without further pleading

or amendment, judgment was entered thereon in defendant's favor for costs. Plaintiff appeals.

I. We have first to inquire what is the nature and extent of the obligation imposed upon railway companies to fence their roads. For the purposes of the case, we may assume, without argument, that, while a railway company is not, as such, exempt from the common-law duty to use its own property with due regard to the rights of others, its obligation to fence is statutory.

The first legislative act to which we need here refer is the one brought forward from the Code of 1873, Section 1289, and re-enacted in Code of 1897, Section 2055, which charged every railroad corporation "operating a railway, and failing to fence the same," with liability in damages for the killing or injuring of live stock "by reason of the want of such fence."

Such was the applicable statute law when the cases of *Young v. St. Louis, K. C. & N. R. Co.,* 44 Iowa 172, and *Asbach v. Chicago, B. & Q. R. Co.,* 74 Iowa 248, precedents relied upon by the appellee herein, were decided. It will be observed that, under this statute, the corporation was not required to fence, but was charged with absolute liability for live stock killed or injured by reason of failing to fence. It will also be noted that the section referred to did not prescribe the kind of fence which should be regarded a sufficient protection, or where such fence should be located. Certain amendatory acts were passed by the twenty-second and twenty-third general assemblies, which were also incorporated in the Code of 1897, as follows: By Section 2057 of that Code, all railway corporations owning or operating a railway in this state were required to construct and maintain a fence of certain described character and materials on each side of the track thereof. By the following section, Code Section 2058, failure of the company or of its responsible officers to comply with the foregoing requirement was

made an indictable misdemeanor. Since that time, and before the alleged cause of action in this case arose, Code Section 2057 has been repealed, and in place thereof was enacted a new Section 2057, found in the Code Supplement, 1913; and, as this case is necessarily governed by the statute as thus amended, we call attention to its terms.

The new section copies the language of the one repealed, in so far as it requires the railway company to construct and maintain a suitable fence "on each side of the track," and describes the kind and quality of the fence which shall be regarded as sufficient; and then further provides that, "on the written request of any person owning land abutting *such right of way* who has constructed, and is maintaining around his said land, or any part thereof, a hog-tight fence on all sides thereof except *along such right of way,* such railroad corporations shall reinforce *such right of way fence* with such additional barb or woven wire as is necessary to make it hog-tight. Fences repaired or rebuilt shall conform to the foregoing provisions."

From the foregoing statement, it will be apparent that, aside from Code Section 2058, making the failure to build and maintain the fence a misdemeanor, the entire statute law applicable to the issue before us is found in this single section, Code Supplement, 1913, Section 2057, and that prior legislation on the subject is a matter of merely historical interest, except, perhaps, as it may be useful as an aid to the construction of the later act. Even if it be admitted that, under the earlier statute, the requirement of a "fence on each side of the track" was not the equivalent of a "fence on each side of the right of way," we think that distinction cannot be made in giving effect to the statute in its present form; for we find the legislature here using both forms of expression in the same section, as expressing the same idea. As will be noted by reference to the words we have italicised in the foregoing quotation, after adopting

from the old statute the phrase "fence on each side of its track," the fence so required is immediately thereafter, and in the same section and same connection, spoken of as "such right of way fence," and its location as being "along such right of way." In short, while it may be true that the original or paramount motive in requiring railway corporations to fence their roads was to promote the public welfare by lessening the danger of collisions between wandering domestic animals and moving trains, it is equally apparent that, at the same time, the legislature sought to make the fences so built serve the purpose of partition fences, and become a part of the enclosure of lands abutting on the right of way.

Under the law of this state, a railway company may condemn a right of way through a farm, and, if there were no obligation upon such company to fence for the protection of the land thus exposed, the burden thereby cast upon the landowner to provide such protection for himself would be a proper and important factor in assessing his damages. But, there being a statute requiring the corporation to fence, it is a settled rule that, if the railway company is charged with the duty of fencing the road, it is presumed that such duty will be performed, and no allowance therefor can be made to the owner whose land is taken for such use.

The net result is that the denial to the landowner of the right to recover damages on account of the fencing which the taking of his land by the company makes necessary is, in a very just sense, the price he pays to the company for protection by the fence which it builds; or, to say the least, the company has received, in its exemption from this item of damages, a valuable consideration for its assumption of the duty to build and of the liability which results to it from its failure to build and maintain. That the owner of abutting land obtains a right to use and depend

upon what our statute terms the "right of way fence" as part of his enclosure, and to recover damages from the company for all damages directly resulting from the failure to maintain such fence, has often been held in other jurisdictions. For example, the New York court, speaking of the legal effect of a somewhat similar statute, has said:

"The act was passed from public considerations. Its purpose was to give protection to the traveling public, as well as redress to farmers contiguous to the road." *Shepard v. Buffalo, N. Y. & E. R. Co.,* 35 N. Y. 641, 643.

The same court has further said that the duty so imposed upon the railway company "is to be performed for the public benefit and security, and also, for the benefit of the owners of cattle generally." *Corwin v. New York & E. R. Co.,* 13 N. Y. 42, 48. Of the general rule of construction of such statutes, that court has also said:

"The act being induced by public considerations, and its purpose being to protect the traveling public and the owners of domestic animals along the line of the road, it should receive a liberal construction, to effect the benign purpose of its farmers. A rigid and literal reading would, in many cases, defeat the very object of the statute, and would exemplify the maxim that 'the letter killeth while the spirit keepeth alive.' Every statute ought to be expounded, not according to the letter, but according to the meaning. * * * And the intention is to govern, although such construction may not, in all respects, agree with the letter of the statute." *Tracy v. Troy & B. R. Co.,* 38 N. Y. 433, 437.

In Michigan, the duty to fence is imposed upon the railroads by statute. Of this act, that court has said that the nature and character of the use of railroads "requires that they should be securely enclosed, for the protection of persons and property transported thereon, and also for the protection of the property of residents in their vicinity."

*Gardner v. Smith,* 7 Mich. 410. In that case, as in the one at bar, the plaintiff's live stock escaped from his enclosure and was lost, because of the neglect of the company in maintaining a fence, and a recovery of damages on that account was sustained.

In Illinois, where a statute required the railway company to erect and maintain fences "on both sides of its road," a company erected a fence ten feet inside the border of its right of way, thus making it impossible for the abutting owner to utilize the railroad fence in completing his enclosure, without extending his own fences ten feet beyond his line; and the court held, upon suit by the landowner, that the railway company had not complied with the statute, and compelled it by mandamus to move such fence to the line of division between the right of way and the abutting farm. *Ohio & M. R. Co. v. People,* 121 Ill. 483.

In Wisconsin, a statute imposing upon railway companies the duty to fence did not specifically provide the nature and extent of the liability of a company failing to comply with its terms; but the court held that this was immaterial, because, the duty being clearly prescribed by statute in the public interest, it follows, as a matter of law, that the company failing to observe its terms became liable to respond in damages as at common law for any special injury directly resulting therefrom to others. In so holding, the court says it is:

"A general principle that, where the law imposes upon any person a specific duty, for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose benefit it was imposed for any damages sustained by reason of such neglect. It is upon this principle that those cases proceed which held the company liable to the owner of adjoining lands whose animals escaped therefrom onto the track for want of fences which the company was bound to make. In most of that class of cases, there

was no positive provision that the company should be liable, but the liability was left to result from an application of the general principle before stated. And, there being no room for doubt that the company was bound to fence for the protection of adjoining landowners, whenever their cattle had been injured for want of such fence, the companies have been held liable, whether the statutes contained an express provision that they should be so or not." *McCall v. Chamberlain,* 13 Wis. 637, 639.

In the same case, after mention of the common-law rule requiring everyone to restrain his own live stock upon his own premises, the court further says that the hardships resulting from this rule, when applied to present-day conditions, were doubtless well understood by the legislature, and led the court "to the conclusion that it was the intention of the statute, in requiring the railroad company to fence its road, to repeal the common-law rule, and to protect, not only the adjoining landowners, but the public generally."

In a later case, *Quackenbush v. Wisconsin & M. R. Co.,* 62 Wis. 411 (22 N. W. 519), under an application of the same rule, the company was held liable to its conductor for injuries sustained by him in a wreck caused by collision with a domestic animal at a point where the road was unprotected by a fence. That the liability of the company for failure to fence is not limited to making compensation for animals killed or injured on its track where the positive duty to fence has been imposed by statute has often been held in other jurisdictions, and, as we shall soon see, it is well supported by our own precedents. In Minnesota, the question has had frequent consideration. The case of *Emmons v. Minneapolis & St. L. R. Co.,* 35 Minn. 503, was before that court on three different appeals, and it was there settled that failure to build and maintain a fence on each side of its road, as provided by statute, rendered the com-

pany liable to an abutting owner for the impairment to the rental value of his land thereby occasioned. It was there insisted by the company that its liability was limited to compensation for the killing or injuring of live stock on its tracks; but the objection was overruled. See, also, *Emmons v. Minneapolis & St. L. R. Co.*, 38 Minn. 215 (36 N. W. 340); and same case, 41 Minn. 133, (42 N. W. 789).

In the more recent case, *Gould v. Great Northern R. Co.*, 63 Minn. 37 (65 N. W. 125), the subject is again renewed, and the ruling adhered to. There, the plaintiff, as a witness on the trial, stated:

"I base my estimate of the rental value upon the proposition that I have a right to join my fence to that of the railway company, built directly on the line between my land and the railroad right of way, so I can have the use of the railroad fence on one side;" and in this position he was sustained by the court.

In its opinion, the court, after holding that the true intent and spirit of the statute required the company to place its fence on the margin of its right of way, adds:

"Probably the railroad company could not, especially when it has only an easement in the right of way, be compelled to build a partition fence, *as such,* yet it may constitute one; and we think the adjoining landowner should share the right to join fences with the fence of the railroad company, whether such a fence is denominated simply a 'railroad fence' or a 'partition fence,' which encloses upon one side the land of the adjoining owner, and, as a matter of legal right, such owner would *have the benefit of it as a partition fence.*"

For failure in its statutory duty to fence, railway companies have often been held liable to abutting owners of land for loss of crops thereby occasioned. *Trice v. Hannibal & St. J. R. Co.*, 49 Mo. 438; *Houston, etc., R. Co. v. Meador,* 50 Tex. 77; *Miller v. St. Louis, I. M. & S. R. Co.,*

90 Mo. 389; *Brown v. Grand Trunk R. Co.*, 24 Q. B. (Can.) 350; *Shotwell v. St. Joseph & S. L. R. Co.*, 37 Mo. App. 654; *Rowe, etc., Co. v. Jennings*, 85 Ga. 444. Also, for injuries to the crop of the adjoining owner by trespassing cattle, entering the premises through an opening in the fence negligently made or permitted by the company. *Holden v. Rutland & B. R. Co.*, 30 Vt. 297; *Comings v. Hannibal & C. M. R. Co.*, 48 Mo. 412. Also, for time lost or expended in hunting and reclaiming live stock which escapes or strays away by reason of the company's neglect to build or maintain a proper fence (*Dean v. Sullivan R. Co.*, 2 Fost. [N. H.] 316, *Gardner v. Smith*, 7 Mich. 410); and for guarding crops to keep out trespassing stock (*St. Louis & S. F. R. Co. v. Sharp*, 27 Kan. 134, *Missouri P. R. Co. v. Lynch*, 31 Kan. 531, *St. Louis & S. F. R. Co. v. Ritz*, 33 Kan. 404).

We now turn to our own cases, which seem to be in accord with the principles recognized in the cited precedents. Here, again, it is proper to recall that, up to the enactment of the amendments by the twenty-second and twenty-third general assemblies, embodied in Code Sections 2057 and 2058, railway companies were under no statutory obligation to fence their roads, and their statutory liability for damages was limited to making compensation for live stock killed or injured upon their tracks. But there was, and for many years had been, a statute making it obligatory upon such companies to make proper and reasonably sufficient cattle guards at all points where a railway enters or leaves any improved or fenced land, and where such railway crosses any public road. This statute was construed to require the cattle guards, not only where the road extends through the outside fences of a farm, but also at division fences. *Smith v. Chicago, C. & D. R. Co.*, 38 Iowa 518. Such guards were required, whether the railroad itself was fenced or not. This court held, in numerous cases, that the landowner was entitled to rely upon the performance of such duty by the

company as a protection to his enclosure; and that, in case of neglect of the duty to furnish and maintain such protection, and consequent injury resulting therefrom, such owner was entitled to recover damages; and that, in such case, his right to damages was not limited to the killing or injury of his live stock on the track. In *Smith v. Chicago, C. & D. R. Co.*, 38 Iowa 518, the abutting owner was held entitled to recover for injuries to his growing crops, and for his time reasonably spent in trying to save his crops from destruction. To the same effect are *Donald v. St. Louis, K. C. & N. R. Co.*, 44 Iowa 157; *Raridan v. Central Iowa R. Co.*, 69 Iowa 527; *Raridon v. Central Iowa R. Co.*, 65 Iowa 640; *Varner v. St. L. & C. R. Co.*, 55 Iowa 677. Quite in point, too, is the case of *Hull v. Chicago, B. & P. R. Co.*, 65 Iowa 713. There, the railway company had taken a deed for a right of way, in consideration of which it agreed, among other things, to build and maintain right of way fences. For failure to perform this obligation, the landowner was held entitled to damages in loss of rental value of his land. Surely, the contract duty to fence in that case was neither more binding nor obligatory than is the company's legal duty to obey the mandatory terms of the present statute. And if, when the obligation to furnish cattle guards for the protection of the farmer's possession and use of his land was mandatory, and the construction and maintenance of right of way fences was optional with the company, failure to furnish the required guards rendered it liable for the natural and proximate consequences of its negligence, it would seem to follow of necessity that when, by change in the statute, the duty to fence was made imperative, and failure therein declared a misdemeanor, the landowner's remedy for injury resulting to him from such failure is at least as full and complete as he would be entitled to at common law for any other act

or omission which affects his property or property rights injuriously.

If such be the true principle, and we are disposed to so hold, then the petition in this case stated a good cause of action, and the trial court erred in sustaining a demurrer thereto.

II.   There is another feature of the case which has been given only passing notice by counsel; but, in view of the fact that the case must be remanded for further proceedings, we think it proper to briefly consider it.

As we have seen, the failure to build and maintain the fence, if shown by the evidence, constitutes a public offense, and it may be thought a material inquiry whether there is any private right of action for an injury resulting from a violation of the statute.   Generally speaking, perhaps the question would have to be answered in the negative, and yet this is true only in a restricted sense; for, if the complaining party has suffered special injury by reason of the unlawful breach of duty, an injury other and different than such as he would sustain in common with the public generally, the law does afford him a remedy.   And this is especially true where the statute, as in this case, prescribes no specific penalty, and does not purport to give to an injured party any redress or right of action not already provided by existing law.   *Parker v. Barnard,* 135 Mass. 116; *Dean v. Sullivan R. Co.,* 22 N. H. 316; *Berdos v. Tremont,* 209 Mass. 489; *Moran v. Dickinson,* 204 Mass. 559 (90 N. E. 1150) ; *Harrod v. Latham Merc. & Coml. Co.,* 77 Kan. 466; *Hartman v. Hollowell,* 126 Iowa 643; *Terre Haute & I. R. Co. v. Williams,* 172 Ill. 379; *New York, C. & St. L. R. Co. v. Lambright,* 5 Ohio C. C. 433; *Baxter v. Coughlin,* 70 Minn. 1; *Pauley v. Steam, etc., Co.,* 131 N. Y. 90; *Aldrich v. Howard,* 7 R. I. 199.   Quite directly in point, in fact and in principle, with the present case is *Dean v. Sullivan,* supra.   See, also, *Union Pacific R. Co. v. McDonald,* 152 U.

S. 262; *Noble v. City of Richmond,* 31 Gratt. (Va.) 271; *Platte, etc., Co. v. Dowell,* 17 Colo. 376; *Brattleboro v. Wait,* 44 Vt. 459; *Kerr v. West Shore R. Co.,* 2 N. Y. Supp. 686.

While there are some inconsistencies in the cases bearing upon this question, we regard it as settled that the statute making a railway company chargeable with misdemeanor for failure to construct and maintain right of way fences, in no manner operates as a denial to the abutting owner of the right to recover damages for the special injuries sustained by him from such cause.

III. Nor do we think it essential to determine whether, under our statute, the railroad fence must be erected on the margin of the right of way, or may be placed on some other line between such margin and the track; but, wherever placed, we think it must be held to be intended, not only to protect the track, but also to serve the purpose of a partition fence, and that the adjoining owner is entitled to utilize it as such by extending his own fences to it, and thereby completing the enclosure of his own premises. If such be the case, and the railway company negligently destroy or open the fence, and the landowner's stock be turned loose, to his loss or injury, he is entitled to recover damages.

It follows from what we have said that the judgment below must be reversed, and the cause will be remanded, with directions to the trial court to overrule the demurrer to the petition, and for further proceedings not inconsistent with the views expressed in this opinion.—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.