EMIL SELL, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS: Failure to Fence—Dual Source of Liability.** Liability
1  of a railway company for loss of stock because of the company's failure to properly maintain right-of-way fences is referable to Sec. 8005, Code of 1924, in case the loss is occasioned *"by the operation of the railway,"* and to Sec. 8001, Code of 1924, in case there be no loss *"by the operation of the railway,"* but a loss occasioned as the *proximate result* of the company's failure to properly maintain the fences required by statute.

**RAILROADS: Failure to Fence—Proximate Cause.** Proof that a rail-
2  way company failed to maintain the required right-of-way fences presents a jury question whether such failure was the proximate cause of animals' going upon the right of way and injuring themselves on the sharp prongs of a cattle guard.

Headnote 1:   33 Cyc. p. 1185.   Headnote 2:   33 Cyc. p. 1312.

*Appeal from Muscatine District Court.*—WILLIAM W. SCOTT, Judge.

MARCH 17, 1925.

ACTION to recover damages for injury to horses belonging to the plaintiff, which it is claimed got upon the right of way of the defendant through a defective gate, and were injured by walking upon the steel prongs of a cattle guard. A verdict was returned for the plaintiff, and the defendant appeals.—*Affirmed.*

*J. G. Kammerer, J. G. Gamble,* and *R. N. Lynch,* for appellant.

*Nichols, Tipton & Tipton,* for appellee.

FAVILLE, C. J.—The undisputed evidence shows that the right of way of appellant extends through a farm occupied by appellee. A right-of-way fence was maintained by appellant be-

1. RAILROADS: failure to fence: dual source of liability.

tween its right of way and the lands of the adjacent farm occupied by appellee. There was a private crossing extending over said right of way, and a gate in the said fence. It is conceded that the evidence was sufficient to carry to the jury the question of the claimed defective condition of the gate. It appears from the evidence that certain horses belonging to appellee were enabled to go through said gate because of its defective condition, and did so, and entered upon the right of way of appellant and were injured while on said right of way, by passing upon a steel cattle guard erected at a public crossing about 1,000 feet east of the gate. There is no claim whatever that the cattle guard was not properly constructed, and at a place where appellant was required under the statute to construct it; nor is there any claim in the record that the operation of any train on appellant's track caused or contributed in any way to the injury of the horses, either by frightening them or otherwise. So far as the record shows, the horses, after entering upon the right of way, passed of their own volition upon the cattle guard, and their hoofs were injured by coming in contact with the steel prongs. Under such facts, the sole question in the case is whether or not appellant can be held liable for the injury that resulted to said horses.

The case is similar in its facts to *Fleming v. Chicago, R. I. & P. R. Co.,* 184 Iowa 785, in which liability under similar circumstances was denied. Said case controls the instant case, unless, as claimed by appellee, it is, in effect, overruled by our holding in the case of *Stevenson v. Atlantic & Northern R. Co.,* 187 Iowa 1318. In the latter case, the facts disclosed that the railroad company had failed to maintain a proper fence between its right of way and adjacent pasture lands, and that cattle belonging to the plaintiff in said case escaped through said

defective fence and disappeared and were entirely lost; and it was held that, under said state of facts, the railway company was liable.

The statutes governing the matter in question are Sections 2055 and 2058, Code of 1897, and Section 2057, Code Supplement, 1913.

Section 2055 is an early statute, and provides for the recovery of damages, and, under certain circumstances, of double damages, for injury to stock because of the failure of a railroad company to fence where such stock is "killed or injured by reason of the want of such fence."

This statute was originally enacted at a time when cattle were permitted to run at large, and when many of the railroads of the state were not fenced. From an early time it has been held by this court that the damages recoverable under this statute are for injuries resulting to live stock from the operation of the railway. *Young v. St. Louis, K. C. & N. R. Co.,* 44 Iowa 172; *Meade v. K. C., St. J. & C. B. R. Co.,* 45 Iowa 699; *Moore v. Burlington & Western R. Co.,* 72 Iowa 75; *Asbach v. Chicago, B. & Q. R. Co.,* 74 Iowa 248; *Mikesell v. Wabash R. Co.,* 134 Iowa 736; *Fleming v. Chicago, R. I. & P. R. Co.,* supra.

Section 2057, Code Supplement, 1913, made it the imperative duty of a railway company within this state to construct fences along its right of way. It was enacted long subsequent to the original section, 2055. The purpose of this statute was to *require* a railroad company to construct fences along its right of way within this state. Provision is made with regard to the kind and character of fence that must be constructed, and under certain circumstances the railway company can be compelled to make such a fence "hog-tight." The obvious purpose and intent of the enactment of this statute were to protect landowners from the possibility of animals' escaping from their lands upon the adjacent right of way; and it may with propriety be said that the statute was in some respects analogous to the statute requiring adjacent landowners to maintain partition fences, and had the same general purpose and object in view.

No specific legislative liability for civil damages is attached to Section 2057, Code Supplement, 1913, for a failure to maintain such a fence, but Section 2058 of the Code, 1897, provides for

punishment in the way of a fine, for failure to comply with the provisions of said section.

We think it is apparent that the legislature, in enacting these statutes, widely separated in point of time, and under greatly different conditions in the state, had in mind two separate and distinct situations, and intended to deal with the same. When what is now Section 2055 of the Code of 1897 was originally enacted, it was wholly a voluntary matter with a railroad company as to whether or not it should fence its right of way. The statute merely provided that, if it failed to fence its right of way, it would be liable for stock injured by the operation of its railway. This statute had to deal with the situation that then existed in the state, where the matter of fencing was wholly voluntary with the railroad, and where the liability for failure to fence was only for damages caused by the operation of the railway.

The later statute, Section 2057, Code Supplement, 1913, compelled railway companies to fence, and provided a criminal penalty for failure so to do. But, aside from the criminal penalty provided in Section 2058, no liability for damages was specifically defined in Code Supplement, 1913, Section 2057. The liability for injuries resulting from the operation of the railway, under Section 2055, still remained, and was still applicable, and was recognized by Code Section 2058. But this did not necessarily measure the limit of the liability of a railway company for failure to perform the affirmative duty resting upon it, under Section 2057, Code Supplement, 1913. The failure to perform this affirmative duty for which a criminal penalty attached, would leave a railway company liable for the common-law liability for negligence for such injuries as were proximately caused by the failure to perform this statutory duty.

This is the basis and reasoning of the *Stevenson* case, supra. In that case it appears that the railway company failed to perform its statutory duty of erecting and maintaining a proper fence. It was proved by the testimony that the direct result of the failure to maintain such fence was the loss of certain cattle belonging to the plaintiff in said action. The cattle escaped from the lands of the plaintiff through the fence which the railway company was affirmatively required to maintain, and which

was in its nature a partition fence, and were utterly lost, not by reason of any act in the operation of the railway, but solely as the proximate result of the failure to maintain the fence; and we held that, under such a state of facts, the railway company was liable for negligence.

The case is consistent with our holdings in determining the liability for injuries resulting from a failure to fence, where the injury is caused by the operation of the railway, under Code Section 2055. Under said section, recovery is had because an injury results to stock where there has been a failure to fence, and the injury is caused by some act in connection with the operation of the railway. Under Section 2057, Code Supplement, 1913, recovery is permissible in the nature of a common-law recovery for negligence, where the failure to fence as required by the statute is the proximate cause of the injury complained of, and when the injury is not caused by the operation of the railway.

Applying these statutes to the situation in the case at bar, we find that the horses of appellee escaped through a defective fence upon the right of way of the railway company. They were injured thereon by a cause not connected with the operation of the railway, within the meaning of Code Section 2055. There was, therefore, no right of recovery under said section.

2. RAILROADS: failure to fence: proximate cause.

Was there negligence on the part of appellant which was the proximate cause of the injury, allowing recovery because of failure to maintain a proper fence, as required by Section 2057, Code Supplement, 1913?

It is not always easy to determine the proximate cause of an injury under a given state of facts. Ordinarily it is a question for the jury.

In *Fishburn v. Burlington & N. W. R. Co.*, 127 Iowa 483, we said:

"The mere fact that another cause intervened between defendants' negligence and plaintiff's injury is not enough to relieve the former from liability if the intervening act was of such nature that its happening was to have been apprehended. Stated otherwise, the intervening cause will not relieve the original negligence of its actionable quality if the occurrence of the

former might have been anticipated. * * * Where two causes, both of which are in their nature proximate, combine to produce an injury, one of which causes being attributable to the negligence of the defendant, and the other not being chargeable to the negligence of either party, the plaintiff may recover. *Langhammer v. Manchester,* 99 Iowa 295; *Manderschid v. Dubuque,* 25 Iowa 108.''

It is well settled that the mere fact that some other cause operates with the negligence of the defendant to produce the injury, does not relieve the defendant from liability. The defendant's original wrong, concurring with some other cause, and both operating proximately at the same time to produce the injury, renders the defendant liable, whether the other cause was one for which the defendant was liable or not. *Gould v. Schermer,* 101 Iowa 582, and cases cited; *Pratt v. Chicago, R. I. & P. R. Co.,* 107 Iowa 287; *Harvey v. City of Clarinda,* 111 Iowa 528; *Aga v. Harbach,* 140 Iowa 606; *Madden v. Saylor Coal Co.,* 133 Iowa 699.

In this case, assuming that appellant was negligent in the manner of maintaining the right-of-way fence, it was not negligent in the manner of maintaining the cattle guard. The immediate thing that injured the hoofs of the horses was the cattle guard. Can it be said that the negligence of appellant in failing to properly maintain the fence was not the proximate cause of the injury which appellee's horses sustained on the cattle guard?

Appellant is, of course, chargeable with knowledge of the existence of the cattle guard. It was, in reality, a part of the fence it was required to maintain. If the horses escaped through the defective fence upon the right of way, there was not only the opportunity and possibility, but the likelihood, that the unrestrained animals might get upon the near-by cattle guard and suffer injury therefrom.

In *West v. Ward,* 77 Iowa 323, the defendant negligently opened a pasture fence, and allowed the plaintiff's mare to escape. The country surrounding the pasture was largely fenced with barbed wire fence, and the mare became entangled in a barbed wire fence, and was injured. We said:

''The animal was exposed to the danger of barbed wire

fences as soon as she commenced running at large. It is plain that defendant's act exposed the mare to the danger, and it is equally plain that the injury resulted from the act. It is also plain that this injury was the proximate result of defendant's acts; for it immediately followed that act, as a sequence. It was the usual, ordinary, natural, and probable result; for the evidence tends to show that it was dangerous to permit horses of this kind to run at large. The word 'dangerous' means 'attended with danger, perilous, full of risk,' etc. Where there is danger, peril, risk of a particular injury, which actually occurs, we must surely say that it is the usual, ordinary, natural, and probable result of the act exposing the person or thing injured to the danger and peril. In the case before us, the mare was not exposed to danger of injury before she was permitted to run at large. Defendant's acts exposed her to danger of the injury. The injury f ¹⁺    ˙    ˙⁺out any intervening act, adding to the danger or aiding to bring the animal within the exposure thereto. Surely, defendant's act in breaking the fence, and thus permitting the mare to run at large, was the direct and proximate cause of the injury.''

In the instant case, appellee's horses were exposed to the danger of injury from the cattle guard when they were permitted to go upon appellant's right of way through a defective fence. Appellant's negligence in failing to properly maintain the fence, thereby permitting the horses to pass upon the highway, where they were necessarily exposed to the danger of injury from the cattle guard, may well be held to have been the proximate cause of the injury to the horses. In any event, it was a proper question for the jury. As bearing somewhat on the question, see *Gardner v. Waterloo Cream Sep. Co.*, 134 Iowa 6; *Liming v. Illinois Cent. R. Co.*, 81 Iowa 246.

We reach the conclusion that there was no liability under Code Section 2055, because the injury did not result from the operation of the railway. We hold that there was liability for negligence in failing to perform a statutory duty, to wit, to maintain a proper fence; and that such negligence was, under the evidence, the proximate cause of the injury,—at least that a jury question was presented.

We find no error in the record requiring reversal, and the judgment of the district court is—*Affirmed.*

EVANS, STEVENS, ARTHUR, DE GRAFF, VERMILION, and AL-BERT, JJ., concur.